IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION


AMY L. MOSS,

      **Plaintiff,**

v.                                    **Civil Action No. 5:17-cv-03672**

ANDREW SAUL[1],
COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Complaint and Motion for

Remand (ECF No. 19) and Defendant's Brief in Support of Defendant's Decision (ECF No. 20).

This is an action seeking review of the decision of the Commissioner of Social Security denying

Claimant's applications for disability insurance benefits (DIB), supplemental security income

(SSI) and Widow's Insurance Benefits (WIB) under Titles II and XVI of the Social Security Act.

Background

Claimant, Amy L. Moss, filed applications for DIB, SSI and WIB on August 1, 2013.

Claimant alleged disability beginning August 1, 2011.  The claims were denied initially on

December 4, 2013, and upon reconsideration on March 28, 2014.  Claimant filed a request for

hearing on May 14, 2014.  A hearing was held on May 3, 2016 in Roanoke, Virginia before an

Administrative Law Judge (ALJ).  The ALJ denied Claimant's applications on June 17, 2016.

Claimant requested the Appeals Council review the ALJ's decision. The Appeals Council denied

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (stating action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Claimant's request for review on June 3, 2017 (Tr. at 1-5).  Subsequently, Claimant brought the

present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. §

405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a

disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined

as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims.  20 C.F.R. §§ 404.1520 and 416.920 (2017).  If an individual is found "not

disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a) and 416.920(a).  The first

inquiry under the sequence is whether a claimant is currently engaged in substantial gainful

employment.  *Id.* §§ 404.1520(b) and 416.920(b).  If the claimant is not, the second inquiry is

whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c) and 416.920(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the

impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§

404.1520(d) and 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*

If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of

past relevant work.  *Id.* §§ 404.1520(e) and 416.920(e).  By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The

burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f)

(2018).  The Commissioner must show two things: (1) that the claimant, considering claimant's

age, education, work experience, skills and physical shortcomings, has the capacity to perform an

alternative job, and (2) that this specific job exists in the national economy. *McLamore v.*

*Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

she has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date.

Claimant meets the insured status requirements through September 30, 2014.  Claimant is the

unmarried widow of the deceased insured worker and has attained the age of 50.  Claimant satisfied

the non-disability requirements for disabled widow's benefits.  The ALJ determined that the

prescribed period for disabled widow's benefits ended on January 31, 2016[2] (Tr. at 13).  Under the

second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments:

depressive disorder; degenerative disc disease of the lumbar spine; obesity; Sjorgen's

syndrome/fibromyalgia; degenerative changes of the cervical spine; and osteoarthritis of the

bilateral knees.  (*Id.*)  However, under the third inquiry the ALJ found that Claimant does not have

an impairment or combination of impairments that meets or medically equals the severity of one

of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)  At the fourth inquiry,

the ALJ found that Claimant has the residual functional capacity (RFC) to perform light work,

with the following additional non-exertional limitations:  she is capable of lifting/carrying ten

pounds frequently and twenty pounds occasionally; standing/walking for six hours in a normal

eight hour work day; sitting for six hours in a normal eight-hour workday; frequent but not constant

---

[2] The unmarried widow of a deceased worker must have attained the age of 50 and have a disability that began before the end of the prescribed period.  The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later (Tr. at 11).

reaching overhead; occasionally climbing ramps and stairs, balancing, kneeling, crawling, crouching and stooping; however, the claimant must avoid concentrated exposure to climbing ropes, ladders and scaffolds, work around hazardous machinery, at unprotected heights or on vibrating surfaces. Claimant would be able to understand, remember and carry out simple work instructions in repetitive, unskilled work (Tr. at 15-16). The ALJ found that Claimant can perform jobs in the national economy such as assembler, marker and laundry folder (Tr. at 21). Accordingly, the ALJ denied Claimant's applications for DIB, WIB and SSI (Tr. at 21-22).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 4, 1963.  Claimant last completed the sixth grade (Tr. at 43).

She has a CNA (Certified Nursing Assistant) license[3] (Tr. at 44).  Claimant's husband passed away

in January 2009[4] (Tr. at 49).

The Medical Record

The medical record has been adopted, as set out in the Plaintiff's Brief in Support of

Complaint and Motion for Remand, Defendant's Brief and the ALJ's decision to the extent as

follows.

On August 21, 2013, Claimant completed her applications for benefits, including a

Disability Report (Tr. at 240-248).  In the Disability Report form, Claimant reported that she can

read and understand English and can write more than her name in English (Tr. at 240). When

asked what physical or mental conditions (specifically including learning problems) limited her

ability to work, Claimant reported rheumatoid arthritis, Sjogren's Syndrome, and anxiety issues

(Tr. at 241). She stated that she attended school through the ninth grade and received her CNA

license in 1994 (Tr. at 242).

On September 12, 2013, Claimant completed an Adult Function Report form (Tr. at 265-

272). When asked how her conditions limited her ability to work, Claimant responded that she

could not stand or walk, lift anything heavy, sit for any length of time, and had trouble walking

up stairs (Tr. at 265).  Claimant stated that she could pay bills, count change and use a checkbook

(Tr. at 268). When asked to fill in the name of the person completing the form, Claimant

---

[3] On November 13, 2013, Claimant reported to Judith F. Lucas, MA, that she obtained her CNA license in 1998 (Tr. at 425).  On August 21, 2013, Claimant reported on a disability application form that she obtained her CNA license in 1994 (Tr. at 242).

[4] Claimant testified that her husband died on January 9, 2009, however, the ALJ's decision states that he died on January 6, 2009 (Tr. at 49, 11).

indicated that she completed the form herself (Tr. at 272).

On November 13, 2013, consultant psychologist, Judith F. Lucas, MA, created a Report of Psychological Evaluation of Claimant (Tr. at 424-427).  Ms. Lucas stated that Claimant used a West Virginia driver's license for identification (Tr. at 424).  Claimant reported to Ms. Lucas that she dropped out of school in the ninth grade when she was 17 years old (Tr. at 424-425).  She stated that she was retained in the second and seventh grades.  She reported that she later received her GED.  (*Id.*)  Claimant stated that she received training and obtained a CNA license.  Claimant reported her work experience was in-home care as a CNA.  (*Id.*)  She reported that she lost her license because she didn't keep up with her clinicals (Tr. at 425).  She reported doing nurse's aid training.  (*Id.*)

On March 3, 2014, Claimant completed a second Adult Function Report form (Tr. at 295-302).  Claimant wrote in her answers on the form.  (*Id.*)  Claimant reported that she could pay bills and use a checkbook/money order (Tr. at 298).  She reported that she could not count change and did not have a savings account.  (*Id.*)

Hearing Testimony

At the administrative hearing, Claimant stated that she only completed the sixth grade in school (Tr. at 43).  Claimant testified that she did not take the GED exam.  (*Id.*)  She testified that she could "read to get by." (*Id.*)  Claimant testified that she earned a CNA license (Tr. at 44).

At the administrative hearing, the vocational expert (VE) testified that Claimant's past work as a personal caregiver and CNA were semiskilled positions (Tr. at 56).  The ALJ asked the VE to consider a hypothetical individual of Claimant's age with the same past work experience and a marginal education who could lift or carry 20 pounds occasionally and 10 pounds frequently; sit six hours during an eight-hour workday and stand and walk six  hours during an eight-hour workday; occasionally climb stairs and ramps, balance, kneel crawl stoop, and crouch;

6

frequently, but not constantly, perform overhead reaching; could have no concentrated exposure to hazardous machinery, work at unprotected heights, or vibrating surfaces; could not climb ladders, ropes, or scaffolds; and could understand, remember, and carry out simple instructions in repetitive, unskilled work (Tr. at 56-57).

In consideration of these limitations, the VE testified that the hypothetical individual could perform work as a small parts assembler, marker and laundry folder (Tr. 57-58). The ALJ asked the VE whether there were any conflicts, apparent or otherwise, between his testimony and the DOT (Tr. at 58). The VE testified that while there were no conflicts between his testimony and the DOT, the DOT did not specifically address overhead reaching. (*Id.*) As such, the VE explained that he reviewed all three identified occupations and, based upon his 30 years of experience as a vocational expert, none of the positions would require any more than occasional overhead reaching (Tr. at 58-59).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ's decision is not supported by the evidence in the transcript (ECF No. 19). Claimant argues that the ALJ improperly found that she could perform the work of a folder. Claimant asserts that although the ALJ found that Claimant could work as a folder, she was limited to perform "Frequent, but not constant reaching overhead." Claimant argues that the job as a folder would require more than constant overhead reaching, which would be a violation of the limitations set forth by the ALJ. (*Id.*) Additionally, Claimant asserts that although the ALJ found that Claimant had a marginal education, the ALJ found that Claimant could perform work as a folder and marker. Claimant asserts that she does not satisfy the reading requirement to perform as a folder or marker. (*Id.*) Lastly, Claimant asserts that the work as an assembler is very narrow and "seems to be a 'pinball assembler.'" (*Id.*) Claimant argues that the "assembler job is

7

so narrow that it does not constitute sustained gainful employment under the Social Security regulations." (*Id.*)

In response, Defendant asserts that the Department of Labor's Dictionary of Occupational Titles (DOT) and the vocational expert's testimony at the hearing confirm that the job as folder requires less than frequent reaching (ECF No. 20). Defendant asserts that the reading required to perform the marker and folder jobs is only a level 1, the lowest level of language skills required by the DOT. Defendant states that Claimant's "writing abilities as well as her past ability to perform semiskilled work undermine her argument." (*Id.*) Lastly, Defendant asserts that "Binding and persuasive case law and the Commissioner's regulations contradict [Claimant's] argument" that the small parts assembler job does not exist in significant numbers in the economy. (*Id.*)

Discussion

Claimant argues that the jobs identified by the VE in response to the ALJ's hypothetical question are either inconsistent with the DOT or that the number of jobs did not exist in significant numbers in the economy (ECF No. 19). Claimant asserts that the job of folder conflicts with her residual functional capacity because it requires "constant reaching." Additionally, Claimant argues that the jobs of folder and marker are inconsistent with her residual functional capacity because these jobs "require a reading on the 'GED of 2.'" (*Id.*) Lastly, Claimant asserts that as a result of the above alleged inconsistencies, the only non-conflicting job that remains is the job of assembler, but that this job "is so narrow that it does not constitute sustained gainful employment."

As stated in the Social Security Administration's regulations, at the fifth step of the sequential evaluation process, the ALJ determines whether there are jobs existing in the economy that a claimant can perform. 20 C.F.R. §§ 404.1520(g), 416.929(g). Work exists in the economy when there is a significant number of jobs (in one or more occupations) having requirements that

a claimant is able to meet with his or her physical or mental abilities and vocational qualifications. 20 C.F.R. §§ 404.1566(b), 416.969(b). When making this determination, the ALJ may take administrative notice of "reliable job information" found in the DOT. 20 C.F.R. §§ 404.1566(d), 416.966(d).

The regulations also provide that the ALJ may rely upon the testimony of a vocational expert when determining whether other work exists that a claimant can perform. 20 C.F.R. §§ 404.1566(e), 416.966(e). "Vocational experts . . . are employment experts who know the mental and physical demands of different types of work." *Fisher v. Barnhart*, 181 F. App'x. 359, 365 (4th Cir. 2006); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e) (stating that an ALJ can use a vocational expert as a source of occupational evidence to determine how many specific jobs exist in the local and national economies); Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (SSA), at *2 ("We most often use vocational experts to provide evidence at a hearing before an ALJ.").

In the present matter, Claimant asserts that her ability to perform frequent, but not constant, overhead reaching would prevent her from performing the job of folder (ECF No. 19). Claimant argues that the DOT supports her assertion that the job of folder requires "more than constant overhead reaching." (*Id.*)

The DOT states that the job of folder requires only frequent reaching (Department of Labor, DOT (4th ed. 1991), 1991 WL 673072). Additionally, as the VE testified, while the DOT does not specifically address overhead reaching, based on his thirty years working as a vocational expert, none of the three occupations he identified would require any more than occasional overhead reaching (Tr. at 59). *See* SSR 00-4p, at *2 (explaining that evidence from vocational experts can include information not listed in the DOT.). Therefore, Claimant's assertion that the job of laundry folder would require more than constant reaching is directly contradicted by the

DOT and the vocational expert's testimony.

Claimant states that because she had a marginal education, she could not perform the reading requirements of the folder or marker jobs because such jobs required "a reading on the 'GED of 2'"[5] (ECF No. 19). This assertion is incorrect. The "GED" as referenced by Claimant refers to the general education development component of an occupation listed in the DOT. It includes those aspects of education that are required of a worker for satisfactory job performance. See DOT at App'x C – Components of the Definition Trailer, 1991 WL 688702. The GED scale is composed of three divisions: reasoning development, mathematical development, and language development. Level 1 language development of a particular occupation is the lowest level of required language skills and requires no more than a reading ability of recognizing the meaning of 2,500 two and three syllable words; reading at a rate of 95-120 words per minute; the need to compare similarities and differences between words and between series of numbers; the ability to print simple sentences containing subject, verb, and object; print series of numbers, names, and addresses; and speak simple sentences using normal word order and present and past tense. *Id*.

Contrary to Claimant's assertion, the jobs of folder and marker have a language level requirement of 1, which requires the lowest level of reading for a job listed in the DOT. When presenting the hypothetical question to the vocational expert, the ALJ specifically included the limitation that Claimant had a marginal education and the vocational expert nonetheless identified the occupations of folder and marker in response (Tr. at 57).

---

[5] GED level 2 language development requires an ability to recognize a passive vocabulary of 5,000-6,000 words and a requires a reading of rate of 190-215 words per minute. At GED 2, there is an ability to read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. An example is the ability to read instructions for assembling model cars and airplanes. This level recognizes the ability to write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. GED 2 requires the ability to speak clearly and distinctly with appropriate pauses and emphasis. Further, correct pronunciation, variations in word order, and using present, perfect, and future tenses is required.

In addition, the evidence of record supports that despite her marginal education, Claimant's reading and writing abilities were sufficient to perform the minimal language requirements of the folder and marker occupations. Claimant's Adult Function Report forms, which she completed herself, were legible and easy to understand (Tr. at 265-272, 295-302). She also indicated when completing her Disability Report form that she could read and understand English and write more than her name (Tr. at 240). Claimant also successfully completed a CNA program and worked as a CNA, a semiskilled position that requires a higher language and reading ability than the occupations of folder and marker (Tr. at 56, 242). Therefore, the ALJ reasonably found Claimant's residual functional capacity would not prevent her from performing the reading requirements of the unskilled occupations of folder and marker.

Lastly, Claimant asserts that if the occupations of folder and marker are not consistent with her residual functional capacity then the only job that remains is small parts assembler with 14,900 positions nationally and 1,500 positions regionally. Claimant argues that this does not constitute a significant number of jobs in the economy to satisfy the Commissioner's burden of production at step five of the sequential evaluation.

At step five, a claimant is not disabled if she can perform work that exists in significant numbers in one or more occupations in either the region where she lives or in several regions of the country. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f). Courts have noted that, although there is no rule of a minimum number constituting a "significant" number of jobs, as little as approximately 100 local jobs can be "significant." *See Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number."); *see also Craigie v. Bowen*, 835 F.2d 56 (3d Cir. 1987) (finding that 200 jobs was a "significant number" of jobs in the national

11

economy); *Dumas v. Schweiker*, F.2d 1545, 1549, 1553 (2d Cir. 1983) (stating that 150 jobs within the regional economy represents a significant number).

When determining whether a claimant can perform other work in the national economy, the Commissioner need only show that such jobs exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1) ("other work . . . must exist in significant numbers in the national economy . . ."). Claimant's only objection to the ALJ's finding that she could perform the job of small part assembler was that it is "so narrow that it does not constitute sustained gainful employment (ECF No. 19). However, the ALJ found that 14,900 positions nationally and 1,500 positions regionally constitutes a significant number of jobs (Tr. at 21). Therefore, Claimant could perform the job of small parts assembler.

## Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Complaint and Motion for Remand (ECF No. 19) and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: July 1, 2019

Dwane L. Tinsley
United States Magistrate Judge

13